UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| GILBERT T. AMOUR, MONICA L. AMOUR )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>BANK OF AMERICA, N.A., as successor )<br>by merger to BAC HOME LOANS )<br>SERVICING, LP, )<br>)<br>)<br>Defendant. ) | 1:13-CV-144<br><br>Judge Curtis L. Collier |

## **M E M O R A N D U M**

Before the Court is Defendant Bank of America, N.A.'s ("Defendant") motion to dismiss the complaint filed by Plaintiffs Gilbert and Monica Amour ("Plaintiffs") (Court File No. 3). Plaintiffs submitted a response (Court File No. 6) and Defendant replied (Court File No. 7). For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion to dismiss (Court File No. 3). Plaintiffs's TCPA claim will be dismissed but the remainder of their claims may proceed.

**I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

According to the complaint, Plaintiffs executed a Deed of Trust on November 2, 2007 that listed the Mortgage Electronic Registration System ("MERS") as beneficiary and Taylor, Bean & Whitaker Mortgage Corp. ("TB&W") as the lender. In 2008, Plaintiffs sought a modification of their mortgage loan from TB&W. Subsequently, on November 25, 2009, MERS assigned the mortgage and Deed of Trust to Defendant, or apparently to BAC Home Loans Servicing, LP ("BAC"), to which Plaintiffs allege Defendant is the successor by merger. Defendant then began accepting payments. At some point, Plaintiffs contacted Defendant to inquire about a possible loan

modification. Although Defendant described itself as "the lender" or "the mortgage servicer," Plaintiffs allege MERS was the actual holder of the Deed of Trust and the mortgage note ("the Note") until November 25, 2009. The owner of the Note and Deed of Trust was Government National Mortgage Association.

The complaint alleges a "detainer action" has been instituted by Defendant. Although not explicitly stated, the Court also surmises a non-judicial foreclosure sale occurred in light of Plaintiffs' wrongful foreclosure cause of action. Plaintiffs sued in Hamilton County Circuit Court alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. 47-18-101, *et seq.*, and wrongful foreclosure. After removal, Defendant filed the instant motion.

## II.   STANDARD OF REVIEW

A Rule 12(b)(6) motion should be granted when it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998). For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer*, *Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). The same deference does not extend to bare assertions of legal conclusions, however, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility as explained by the Court "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

As noted above, Plaintiffs bring three separate causes of action each of which Defendant has moved to dismiss. The Court will address each cause of action separately.

### A. Wrongful Foreclosure

Plaintiffs allege wrongful foreclosure. Plaintiffs contend the "actual creditor" of Plaintiffs's loan is unknown and "[w]hich, if any of the[] entities, ever had possession of the Note signed by Plaintiffs; had authority to order the non-judicial sale under that Note; the authority to modify the terms of that Note; or the authority to perform a non-judicial foreclosure sale pursuant to the terms of the Note and Deed of Trust is unclear" (Court File No. 1-1, Complaint, ¶ 27). Plaintiffs vaguely allege this uncertainty violated the requirements of Tennessee statutory law and the Tennessee Constitution.

In Tennessee, as in many states, "a promissory note is a negotiable instrument, unless it

3

contains a statement that it is non-negotiable, Tenn. Code Ann. § 47–3–104 (West 2012), and thus may be transferred to another party who receives the right to enforce the instrument, Tenn. Code Ann. §§ 47–3–201, 203, 301, 302 (West 2012)." *Dauenhauer v. Bank of N.Y. Mellon*, No. 3:12–cv–01026, 2013 WL 209250, at *5 (M.D. Tenn. Jan. 16, 2013). Moreover, under Tennessee law, the Deed of Trust need not be separately assigned so that the holder may enforce the note. *Id.* (". . . Tennessee law 'treat[s] the note as the principal thing and the mortgage [or deed of trust] as the incident' that follows the note.") (quoting *W.C. Early Co. v. Williams*, 186 S.W. 102, 103–04 (Tenn. 1916)).

And contrary to Plaintiffs's argument, foreclosure in Tennessee is not required to be performed by the "actual creditor," a term Plaintiffs do not further define, but may be performed by "the holder of the instrument." Tenn. Code Ann. § 47-3-301. A holder of an instrument is a person or entity "[i]n possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." Tenn. Code Ann. § 47-1-201. Attached to Defendant's reply brief is a copy of the Note,[1] which is endorsed in blank, thus rendering it bearer paper, enforceable by whoever possesses it. *See also* Tenn. Code Ann. § 47-3-205(b) ("When endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed."). Moreover, Exhibit B to the complaint is an assignment of the Deed of Trust and the Note from MERS, acting as nominee for TB&W, to Defendant's

---

[1] The Court may consider this document because it was relied upon in Plaintiffs's complaint and is integral to Plaintiffs's claims. *Commer. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) ("[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment.").

4

predecessor, BAC, on November 25, 2009.[2] Also appended to the complaint as a part of Exhibit B is a document titled "Substitution of Trustee," which lists BAC as the beneficiary of the Deed of Trust and appoints Reconstrust Company, N.A. as the Substitute Trustee.[3]

Plaintiffs's concern about who may have actually had an ownership interest in the loan is beside the point. Of particular importance here, "[a] person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument." Tenn. Code Ann. § 47-3-301. In their brief, Plaintiffs state "[p]erhaps Ginnie Mae is the owner of the note and true creditor; but if so, that belies the public records in Hamilton County, which list the last holder of the note and deed of trust" as BAC. For the reasons identified above, however, who is the *holder* of the Note is the key question.

Regardless, the Court must deny Defendant's motion. Plaintiffs have alleged possession of the Note itself was unclear at the time of the foreclosure sale (Court File No. 1-1, Complaint, ¶ 27). Although Defendant argues this constitutes a presentment requirement that was waived in the Deed of Trust, the allegation is important in this case given that the Note at issue was bearer paper. The holder of the Note at the time of the foreclosure sale was the bearer. And Plaintiffs are not arguing the foreclosure sale was void for Defendant's failure to present the Note upon request at the time

---

[2] Plaintiffs make vague arguments about MERS, but courts in this district have rejected such arguments and the Court does so today as well. *See Samples v. Bank of Am., N.A.*, No. 3:12–CV–44, 2012 WL 1309135, at *4 (E.D. Tenn. Apr. 16, 2012) ("The role of MERS in the mortgage process has also been validated by many courts, including those within the United States Court of Appeals for the Sixth Circuit.").

[3] The Court may consider documents appended to the complaint when ruling on a Rule 12(b)(6) motion. *Commer. Money Ctr.*, 508 F.3d at 335 ("[D]ocuments attached to the pleadings become part of the pleadings[, they] may be considered on a motion to dismiss . . . without converting a motion to dismiss into one for summary judgment.").

5

of the sale; rather, Plaintiffs argue Defendant may not have possessed the Note at all. Given Plaintiffs's allegation that the possession of the Note is unclear, this claim may not be dismissed. The Court will **DENY** Defendant's motion to dismiss Plaintiffs's wrongful foreclosure claim.

### B. FDCPA

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debts collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 591 (6th Cir. 2009) (quoting 15 U.S.C. § 1692(e)). Courts should "begin with the language of the statute itself" when interpreting the FDCPA. *Schroyer v. Frankel*, 197 F.3d 1170, 1174 (6th Cir. 1999). Courts also should use the "'least sophisticated consumer' standard, an objective test, when assessing whether particular conduct violates the FDCPA." *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611-12 (6th Cir. 2009) (quoting *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006)). By using the "least sophisticated consumer" standard, courts can ensure "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id.* (quoting *Kistner v. Law Offices of Michael P. Margelefsky, LLC.*, 518 F.3d 433, 438 (6th Cir.2008) (quotation marks and citations omitted)).

Defendant argues Plaintiffs's claims fail because it is not a debt collector as defined in the FDCPA. Rather, Defendant argues it is a creditor under the FDCPA. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term does not include persons "collecting or attempting to collect any

6

debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person . . . ." *Id.* In contrast, a "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed," though it does not include "any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). The operative question is therefore whether the debt in this case was in default at the time it was assigned to Defendant to service the debt. *See Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012) ("For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired." ); *see also Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) (noting "the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not").

As Defendant correctly notes, nowhere in the complaint does it allege the debt was in default when it was assigned to Defendant. True, Plaintiffs allege they sought modification prior to assignment of the debt, but a loan is not necessarily in default when a debtor seeks modification. Plaintiffs also attach a payment history to their response, which they suggest indicates the debt was in default at the time it was assigned to Defendant. The Court, however, may not consider materials outside the complaint on a Fed. R. Civ. P. 12(b)(6) motion and may not consider this payment history.

Regardless, as discussed above, appended to the Complaint is the assignment of the Deed of Trust and Note in this case. Relevant to this motion, the Substitution of Trustee document states

7

"it appears that action is now required under the Deed of Trust as a result of default having occurred in the underlying indebtedness" (Court File No. 1-1, Complaint, Ex. B). This document is dated the same day the assignment to BAC was made: November 25, 2009. Accordingly, it appears the loan was in default when BAC obtained it. Perhaps it is possible that by coincidence the debt went into default in the hours between the execution of these documents, if there was such time between their execution. But considering the complaint in the light most favorable to Plaintiffs, the Court will assume it did not. Defendant, who succeeded to BAC's interest by merger, is therefore a debt collector under the FDCPA because the debt was in default at the time Defendant received it by assignment.

With respect to the merits of the Plaintiffs's FDCPA claim, the Court holds that denial of Defendant's motion is necessary. Again, the crux of Plaintiffs's claim is Defendant's alleged lack of authority, although with respect to this claim Plaintiffs argue Defendant deceptively claimed to be empowered to modify the loan when it was not. Plaintiffs assert that Defendant violated 15 U.S.C. § 1692e, which prohibits a debt collector from using any "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Plaintiffs also allege Defendant violation 15 U.S.C. § 1692f, which precludes a debt collector from using any "unfair or unconscionable means to collect or attempt to collect any debt." Plaintiffs contend Defendant "purported to have authority to enter into a loan modification, but it was not the owner of the debt and the actual owner of the debt was Government National Mortgage Association, which was not disclosed to Plaintiffs during the modification process" (Court File No. 1-1, Complaint, ¶ 18). This is apparently the only basis for Defendant's alleged FDCPA violations.

In their response to Defendant's motion, Plaintiffs accuse Defendant of misusing federal

funds provided to it after the 2008 financial crisis and broadly argue it has been "deceitful in its use of the federal government's largess." Plaintiffs append materials to their response which, although they appear to be primarily public documents, support broad allegations of misconduct and are not relevant to this case in particular. From what little Plaintiffs have stated in support of the actual allegations in this case, the Court sees only this alleged misrepresentation that Defendant was empowered to modify the loan as a basis for the FDCPA violations.

Some of the attachments to Plaintiffs's complaint belie this claim. As noted above, Plaintiffs attached to their complaint the assignment of the Deed of Trust and the Note to BAC. The assignment "assigns and transfers" to BAC "all beneficial interest" under the Deed of Trust and "together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust/mortgage" (Court File No. 1-1, Complaint, Ex. B) (emphasis removed). Thus MERS, acting as nominee for TB&W, assigned TB&W's interest in the Deed of Trust to BAC. The rights transferred in this assignment include "the repayment of the debt evidence by the Note, with interest, and all renewals, extensions and modifications of the Note" (*id.*).

However, given Plaintiffs's allegations, the Court cannot say the Complaint is devoid of factual allegations that support its claim. The Court must look upon the Complaint generously and the Complaint, sparse though its allegations may be, could be read to allege uncertainty not only with respect to possession of the Note but also with respect to possible subsequent assignments or transfers of the Note. Defendant has made compelling responses to Plaintiffs's claim, especially in the context of the documents upon which Plaintiffs rely. But in light of the standard for a motion to dismiss, this claim must proceed. Accordingly, the Court will **DENY** Defendant's motion to

9

dismiss Plaintiffs's FDCPA claims.

## C. TCPA

Plaintiffs also bring claims under the TCPA. The TCPA prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(a). To make out a claim under the TCPA, a plaintiff must establish: (1) an ascertainable loss of money or property; (2) that such loss resulted from an unfair or deceptive act or practice; and (3) that the act or practice is declared unlawful under the TCPA. Tenn. Code Ann. § 47-18-109. Although the TCPA imposes no single standard to determine whether an act or practice is deceptive, the Tennessee Supreme Court has described a deceptive act or practice as "'a material representation, practice, or omission likely to mislead . . . reasonable consumers' to their detriment." *Fayne v. Vincent*, 301 S.W.3d 162, 177 (Tenn. 2009) (quoting *Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn. 1997) (quoting *Bisson v. Ward*, 628 A.2d 1256, 1261 (Vt. 1993))).

Plaintiffs have cited two provisions of the TCPA. The first is Tenn. Code Ann. § 47-18-104(b)(14), which targets practices that "[c]aus[e] confusion or misunderstanding with respect to the authority of a salesperson, representative or agent to negotiate the final terms of a consumer transaction." This section is apparently aimed again at Defendant's alleged lack of authority to modify Plaintiffs's loan. However, as Defendant notes, the TCPA does not apply to foreclosure proceedings. *Gray v. Bank of Am., N.A.*, No. 3:12–CV–105, 2012 WL 3230387, at *4 (E.D. Tenn. Aug. 6, 2012); *see also Coleman v. Indymac Venture, LLC*, – F. Supp. 2d –, 2013 WL 4499133, at *8 (W.D. Tenn. Aug. 20, 2013) ("[C]ourts in Tennessee have consistently held that the TCPA does not reach the manner in which a lender conducts foreclosure proceedings.") (internal quotation marks omitted). Although Plaintiffs argue their claim is not targeted at the *foreclosure* but rather

10

at the *modification* process, courts have held that the TCPA is also inapplicable to loan modification proceedings because they deal with "[c]redit terms of a transaction" specifically exempted from the TCPA's coverage.[4] *See* Tenn. Code Ann. § 47-18-111(a)(3); *see also Pugh v. Bank of Am.*, No. 13–2020, 2013 WL 3349649, at *9 (W.D. Tenn. July 2, 2013); *LeBlanc v. Bank of Am., N.A.*, No. 2:13–cv–02001–JPM–tmp, 2013 WL 3146829, at *7-8 (W.D. Tenn. June 18, 2013); *Silvestro v. Bank of Am., N.A.*, No. 3–13–0066, 2013 WL 1149301, at *5 (M.D. Tenn. Mar. 19, 2013). Plaintiffs cite a handful of cases considering the consumer protection acts of other states, but do not address these cases indicating the inapplicability of the TCPA to this case. The Court concludes Plaintiffs's TCPA claim must be dismissed.

Additionally, Plaintiffs cite the "catch all" provision of Tenn. Code Ann. § 47-18-104(b)(27), which declares "[e]ngaging in any other act or practice which is deceptive to the consumer or to any other person" an "unfair or deceptive act[]." However, subsection (b)(27) was amended in 2011 and is now solely enforced by the "attorney general and reporter and the director of the division." *See* Tenn. Code Ann. § 47–18–104(b)(27) ("Engaging in any other act or practice which is deceptive to the consumer or to any other person; provided, however, that enforcement of this subdivision (b)(27) is vested exclusively in the office of the attorney general and reporter and the director of the division."); 2011 Tenn. Pub. Acts 510, at *15; 2011 Tenn. Pub. Ch. 510; 2011 Tenn. HB 2008 (effective Oct. 1, 2011). In their complaint, Plaintiffs state they are entitled to bring a private right

---

[4] As recently recognized by the Tennessee Court of Appeals, this district has previously indicated that the exemption of credit terms of a transaction reflects the Tennessee legislature's belief that consumers were adequately protected in credit transactions by the Truth in Lending Act. *See Russell v. Household Mortg. Servs.*, No. M2008–01703–COA–R3–CV, 2012 WL 2054388, at *6 (Tenn. Ct. App. June 7, 2012) (quoting *Beard v. Gen. Motors Acceptance Corp.*, CIV–1–92–149 (E.D. Tenn. May 6, 1993)).

11

of action under this section of the TCPA but do not explain in their brief how they are so empowered. And Plaintiffs do not respond to Defendant's argument this claim should be dismissed on this basis. Accordingly, the Court considers opposition to dismissal of the subsection (b)(27) claim waived. *See Notredan, LLC v. Old Republic Exchange Facilitator Co.*, – F. App'x –, No. 12–5852, 2013 WL 3887501, at *2 (6th Cir. July 29, 2013) ("Notredan's response to the motion to dismiss did not address th[e] argument [Notredan's complaint failed to state a claim for breach of fiduciary duties]. This failure amounts to a forfeiture of the fiduciary-duty claim."); *see also* E.D. Tenn. L.R. 7.2 ("Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought.").

The Court will **GRANT** Defendant's motion to dismiss Plaintiffs's TCPA claims.

### IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion to dismiss (Court File No. 3). Plaintiffs's TCPA claim will be dismissed but the remainder of their claims may proceed.

**An Order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**